UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60342-CR-ZLOCH

UNITED STATES OF AMERICA,

vs.

RODNEY HOLLOMAN,

Defendant.
_____/

## DETENTION ORDER

Pursuant to 18 U.S.C. § 3142(f), on December 28, 2018, a hearing was held to determine whether the defendant, Rodney Holloman, should be detained prior to trial. Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions of release will reasonably assure the appearance of this defendant as required and the safety of any other person and the community. Therefore, it is hereby ORDERED that the defendant, Rodney Holloman, be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i), this Court hereby makes the following findings of fact and statement of reasons for the detention:

1. The defendant is charged with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Therefore, the defendant is charged with a crime involving a firearm. 18 U.S.C. § 3142(g)(1).

2. The Court received credible evidence that the defendant committed the offense with which he has been charged. More specifically, the Government adopted the Notice of Proffer of Facts in Support of Pretrial Detention ("Proffer") (DE 5) as its case

agent's testimony on direct examination. The content of that Proffer was not materially impeached, contradicted, or rebutted, and the undersigned accepts the facts set forth therein as true for purposes of this bond determination. In pertinent part, the Proffer states:

1. On or about June 22, 2018, Broward Sherriff's [sic] Office ("BSO") officers were patrolling the City of West Park, in Broward County, traveling on N.W. 23rd Street. A BSO Detective observed a black male acting suspiciously, including ducking when this individual saw the police, around a parked car. The BSO Detective walked to the parked car and saw a black male, later identified as HOLLOMAN, throw a bright green/teal colored object from the individual's location over a fence.

2. The gun, later determined to be loaded, struck the front door of a nearby residence over the fence and made a small dent in the front door. The occupants of that residence, upon hearing the sound, came to the front door.

3. HOLLOMAN was detained by BSO and a BSO Detective recovered the firearm in front of the residence. The firearm was separated from its loaded magazine in front of the door; the BSO Detective saw the door was dented from the gun toss and took pictures.

4. HOLLOMAN was subsequently read his <u>Miranda</u> rights. HOLLOMAN said he was a convicted felon and that was why he threw the gun over the fence. HOLLOMAN was asked what if the gun was fired after it hit the house, and a child was then hit? Holloman replied "I know."

5. The firearm recovered was a teal blue Ruger LCP .380 caliber pistol, bearing serial number 371501881 and a pistol magazine with five (5) .380 caliber rounds inside. The gun trace revealed this firearm was stolen. An ATF Special Agent conducted an interstate nexus determination and concluded that the firearm was manufactured in Arizona and the ammunition was manufactured in Nebraska, therefore, outside the State of Florida.

6. This firearm was subsequently sent to a laboratory for DNA analysis. A DNA profile was also obtained from HOLLOMAN. On the slide and sights of the gun, the laboratory concluded that "there is extremely strong support that Rodney Holloman and two unknown persons contributed to this DNA profile, rather than three unknown persons." Therefore, the DNA analysis found extremely strong support that HOLLOMAN's DNA was on the slide and/or sights of the firearm.

2

7. HOLLOMAN is a convicted felon, having been adjudicated guilty of felony offenses in numerous cases in Broward County, Florida. HOLLOMAN originally pled no contest to these charges, but this was changed to a guilty adjudication when HOLLOMAN violated his probation. On October 3, 2014, it appears the Broward Circuit Court adjudicated HOLLOMAN guilty of the following charges and sentenced him to thirty months' imprisonment concurrently: (1) Case No. 1317177CF10A, Possession of Cocaine (felony), Methylenedioxymethcath (felony), and Resist/Obstruct without Violence (misdemeanor); (2) Case No. 14003057CF10A, Tampering with Physical Evidence (felony), Possession of Cannabis (misdemeanor), Suspended License (misdemeanor); (3) Case No. 14003655CF10A, Possession of Cocaine (felony), Possession of PVP (felony); and (4) Case No. 14007381CF10A, Feeling [sic] or Attempting to Elude a Law Enforcement Officer (felony), Resisting without violence (misdemeanor), Driving with Suspended License (misdemeanor).

8. The State of Florida's Office of Executive Clemency was contacted by ATF and confirmed that HOLLOMAN's civil rights had not been restored and he remains a convicted felon.

9. HOLLOMAN has a pending Broward County criminal case, Case No. 18011985CF10A. On a different occasion, HOLLOMAN was recently arrested for felon-in-possession of a firearm on or about September 30, 2018 when HOLLOMAN was in a car with a passenger. This Smith & Wesson Model M&P 9 Shield 9mm caliber firearm was sent to the laboratory for DNA analysis along with a DNA sample from HOLLOMAN. The laboratory concluded there is "extremely strong support" that HOLLOMAN's DNA was on the trigger, grip, slide and/or sights of this firearm.

Proffer ¶¶ 1-9 (DE 5).

According to the Government, if convicted at trial of the instant charge, the defendant would face an advisory Guidelines sentence of 63 to 78 months' imprisonment. 18 U.S.C. § 3142(g)(2).

3. The pertinent history and characteristics of the defendant are significant to this Court's assessment of his candidacy for bond. Rodney Holloman is a 29-year old United States citizen and lifelong resident of South Florida. He does not possess a passport and has not traveled outside the United States.

The defendant advised that he is single; he has four minor children who reside with their respective mothers in South Florida. The defendant resides with his mother and three siblings in West Park (Florida). Although he stated to Pretrial Services that he contributes $280 towards the household expenses, his mother disputed that statement; she told Pretrial Services that he has not contributed towards the household expenses since 2015.

The defendant reported that he works sporadically with his uncle in the tree service/lawn care industry, earning $200 per day. Previously, he worked for two months at a tire shop warehouse, earning $1,200 per month. The defendant does not possess any assets.

According to the Pretrial Services Report, the defendant has a very extensive criminal history that appears to include twenty-one (21) arrests and fourteen (14) convictions or withheld adjudications. More specifically, the defendant's convictions (and withheld adjudications) are shown as follows: possession of cannabis 20 grams or less/suspended driver's license (adjudication withheld) (2009); possession of cannabis less than 20 grams/possession of drug paraphernalia (adjudication withheld) (2010); operating motor vehicle without driver's license (adjudication withheld) (2012); possession of cannabis less than 20 grams (adjudication withheld) (2012); possession of cannabis 20 grams or less/use or possession of drug paraphernalia/reckless driving (adjudication withheld) (2012) (probation subsequently revoked and sentenced to term of imprisonment); possession of cannabis less than 20 grams (adjudication withheld) (2013); loitering or prowling (2014); possession of cocaine/possession of methylenedioxymethcath/resisting officer without violence (adjudication withheld) (2014) (probation subsequently revoked and sentenced to term of imprisonment); possession of cannabis 20 grams or less (2014);

4

tampering or destroying evidence/possession of marijuana/driving while license suspended (adjudication withheld) (2014) (probation subsequently revoked and sentenced to term of imprisonment); possession of cocaine/possession of MDMA (adjudication withheld) (2014) (probation subsequently revoked and sentenced to term of imprisonment); fleeing or attempting to elude a law enforcement officer/resist officer without violence/DWLS first offense (adjudication withheld) (2014) (probation subsequently revoked and sentenced to term of imprisonment); resisting officer without violence (2014); and driving while license suspended (adjudication withheld) (2017). In sum, the defendant had his probation revoked, and he was sentenced to a term of imprisonment on five (5) separate cases in which he had initially been granted withheld adjudications.

Finally, the Report shows that the defendant was on pretrial release from the June 2018 state charge for possession of a firearm by a convicted felon when we was arrested in September 2018 and charged with possession of a (different) weapon or ammunition by a convicted felon/resisting officer without violence/driving while license suspended.

In sum, although defense counsel argued that the defendant has not previously failed to appear in court, the totality of the facts establish that his release on bond at this time would pose an unreasonable risk of flight. Unlike the defendant's previous charges, the defendant now faces the prospect of 63 to 78 months' imprisonment in a case involving very strong evidence. And although the defendant has familial ties, he has few legitimate financial ties and possesses no assets; he also appears to have been untruthful with Pretrial Services concerning his household contributions. Furthermore, he has an established pattern of disregarding court supervision: the defendant had his probation revoked in five (5) separate cases; and the defendant was on pretrial release from the

5

June 2018 felon in possession state charge – the same incident that gave rise to the instant Indictment – when he was arrested in September 2018 on a new felon in possession charge. Moreover, the defendant has a pattern of not surrendering to law enforcement and of resisting arrest: he has been convicted of fleeing or attempting to elude a law enforcement officer; he has been convicted of tampering with or destroying evidence; and he has been convicted on three separate occasions of resisting an officer without violence. Finally, the defendant's extensive arrest record establishes that his disregard for the law is continuing, unabated. Although defense counsel argued that the details of the convictions and probation violations are at this time unknown, a reasonable inference can nonetheless be drawn from the volume and nature of these convictions and violations that the defendant has a not been compliant with the law, let alone with the conditions of his court or pretrial release supervision.

Given the defendant's disregard for the law, for his court supervision, and for the conditions of his recent pretrial release, coupled with his demonstrated willingness to flee/elude police, destroy/tamper with evidence, and resist arrest without violence, the Court concludes that he would not be likely to appear if released on bond prior to trial. 18 U.S.C. § 3142(g)(3)(A) and (B).

4. The defendant has been arrested on 21 occasions, had his probation revoked on 5 occasions, and been convicted or had adjudication of guilt withheld on 14 occasions. It is against this record of continuous criminal activity that the instant offense is properly viewed. Despite his multiple felony convictions, including several narcotics violations, the defendant in June 2018 chose to arm himself with a stolen .380 caliber handgun loaded with several rounds of ammunition, knowing that it was unlawful for him

to do so. He then threw the loaded firearm against the door of a nearby home, risking that it could discharge. That firearm possession offense is the one with which he is charged in the instant Indictment and also in the state court. Significantly, the evidence shows that while on pretrial release from the June 2018 state charge, the defendant was again arrested, in September 2018, in possession of another firearm loaded with multiple rounds of ammunition. On that occasion, the weapon was a loaded Smith & Wesson 9 mm caliber firearm.

Defense counsel argued that the defendant does not pose a danger because he has not been convicted of any violent offenses. However, the concept of danger to the community is not so limited.[1] As the Supreme Court has observed with respect to the enactment of 18 U.S.C. § 922(g)(1): "Congress sought to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." Small v. United States, 125 S.Ct. 1752, 1758 (2005) (citations and internal quotations omitted). Congress, therefore, considered it dangerous for an individual with a felony conviction to possess a firearm, let alone an individual with multiple felony convictions, such as this defendant. Furthermore, the Pretrial Detention statute expressly requires a court in determining whether there are conditions of release that will reasonably assure the safety of any person and the community to take into

---

[1] A 2007 article in the Akron Law Review, complete with citations to the legislative history of the 1968 Gun Control Act, explains that Congress enacted 18 U.S.C. § 922(g)(1) "in part to prevent firearms from getting into the hands of dangerous individuals" based on their "determin[ation] that a prior conviction for crimes punishable by imprisonment for more than one year was an indication that an individual was potentially dangerous." 40 Akron L. Rev. 751, 751 (2007). Rodney Holloman has multiple felony convictions, including convictions for narcotics offenses.

7

account not only whether the offense is a crime of violence, but also whether the offense "involves a . . . firearm, . . ." See 18 U.S.C. § 3142(g)(1).

Defense counsel also argued that the Government has not proffered any evidence of the purpose for which the defendant possessed the firearm and that absent such evidence the Court should not conclude the he poses a danger. The Court does not agree. This defendant comes before this Court with a long history of criminal violations – 21 arrests, 14 convictions or withheld adjudications (including convictions for possession of cocaine, MDMA, and methylenedioxymethcath), and 5 violations of probations. Furthermore, the weapon he possessed not only was loaded with multiple rounds, it was also stolen. And by throwing the firearm against the door of a nearby home and risking that it could discharge, he demonstrated a disregard for the well-being of members of the community who may have been in the vicinity. Then, after being granted release on a state court bond for that firearms offense, the defendant was sufficiently determined to again possess a loaded firearm that he chose to disregard the conditions of his pretrial release and the felon in possession prohibition and repeat the very same violation – just three months later. The Court, therefore, concludes that the defendant, Rodney Holloman, has not been deterred or rehabilitated by virtue of his many previous contacts with the criminal justice system and that he poses a danger to the community. 18 U.S.C. § 3142(g)(4).

5. The Court specifically finds that there is no condition or combination of conditions of release that reasonably will assure the defendant's appearance as required and the safety of any other person and the community. 18 U.S.C. § 3142(e).

Based upon the above findings of fact, which were supported by clear and convincing evidence, the Court has concluded that this defendant presents an

unreasonable risk of flight if released on bond prior to trial and a danger to the community. Accordingly, the Court hereby directs:

1. that the defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

2. that the defendant be afforded reasonable opportunity for private consultation with counsel; and

3. that, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED at Fort Lauderdale, Florida this 28th day of December 2018.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Hon. William J. Zloch
Senior United States District Judge

All counsel of record

United States Marshal

United States Pretrial Services